# United States Tax Court

T.C. Memo. 2022-83

NNABUGWU C. EZE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 21425-19.                    Filed August 4, 2022.

————————

Nnabugwu C. Eze, pro se.

*Samuel M. Warren* and *Sarah A. Herson*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, *Judge*: With respect to petitioner's Federal income tax for 2015 and 2016, the Internal Revenue Service (IRS or respondent) determined deficiencies of $39,241 and $45,735, respectively, plus accuracy-related penalties under section 6662(a).[1]  Respondent has conceded the penalties for inability to demonstrate adequate supervisory approval. *See* § 6751(b)(1).  Petitioner has conceded receiving unreported interest income of $24 and $13 in 2015 and 2016, respectively. The chief issues remaining for decision are whether petitioner has substantiated expenses allegedly incurred in conducting two sets of sole proprietorship activities.  With one exception, we resolve these questions in respondent's favor.

————————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round most monetary amounts to the nearest dollar.

[*2]                        FINDINGS OF FACT

These findings are based on the parties' pleadings and the documents and testimony admitted into evidence at trial. We reserved ruling on the admissibility of certain documents proffered by petitioner; our rulings on those matters are set forth in the relevant portions of this Opinion. Petitioner resided in Maryland when his Petition was timely filed and when the case was tried.

A.   *Petitioner's Business Activities*

Petitioner graduated from Rutgers University in 1996. He did not have a definite career path and gravitated toward information technology consulting. He submitted no evidence about his jobs before 2015–2016, the tax years at issue. During 2015–2016 he reported income and expenses from two sets of activities on Schedules C, Profit or Loss From Business. The first involved consulting in the electronic healthcare (EHC) field (Schedule C1 business). The second involved residential construction (Schedule C2 business).

In his Schedule C1 business petitioner worked as an independent contractor for National Computer Services Consultants (NCSC), which was a subcontractor for Northrup Grumman. NCSC paid him by direct deposit to his bank account. His job included visiting clients and potential clients—e.g., doctors' offices and clinics—and helping them assess their "system requirements" for participating in the EHC program. He also assisted clients in getting updates to the EHC software and "document[ing] any bugs that would arise." This allegedly entailed additional in-person visits to clients' business premises.

On his tax returns petitioner described his Schedule C2 business as "home improvement." He allegedly did handyman, construction, and residential rehabilitation projects for individual customers. He offered no specific testimony about his business arrangements with his customers or the terms on which he was paid. He said that he had written contracts with his customers, but he introduced no such contracts into evidence. He supplied no documentary evidence of invoices to his customers. He supplied no banking records to substantiate the income or expenses reported for his Schedule C2 business. None of his alleged customers reported payments to him on Forms 1099–MISC, Miscellaneous Income. His reported expenses for this activity vastly exceeded his reported income.

**[\*3]**   Petitioner owned three vehicles: a 2008 Mercedes Benz, a 2002 Ford SUV, and a 2004 Chrysler. He testified that he used the Mercedes exclusively in connection with his Schedule C1 business; that he used the Ford exclusively in connection with his Schedule C2 business; and that he used the Chrysler exclusively for personal and family purposes. We did not find that testimony credible.

B.   *Petitioner's Tax Reporting and IRS Examination*

Petitioner filed timely returns on Forms 1040, U.S. Individual Income Tax Return, for 2015 and 2016, using head-of-household filing status and claiming two dependents. For 2015 he reported taxable income of $3,314 and claimed a refund of $774. For 2016 he reported taxable income of zero and claimed a refund of $744. For his Schedule C1 consulting business he reported income and expenses as follows:

| Item | 2015 | 2016 |
|---|---|---|
| Consulting Fees | $114,140 | $142,675 |
| Car/Truck Expenses | (21,490) | (30,533) |
| Insurance | (480) | — |
| Travel | — | (2,815) |
| Other Expenses | (12,501) | (9,662) |
| **Net Profit** | **$79,669** | **$99,665** |

For his Schedule C2 construction business he reported income and expenses as follows:

| Item | 2015 | 2016 |
|---|---|---|
| Gross Receipts | $20,355 | $27,875 |
| Car/Truck Expenses | (6,667) | (9,655) |
| Other Expenses | (77,013) | (99,275) |
| **Net Loss** | **($63,325)** | **($81,055)** |

The IRS selected petitioner's returns for examination and issued him a timely notice of deficiency making numerous adjustments. For 2016 the IRS disallowed an itemized deduction of $2,847 for a mortgage insurance premium. For both years the IRS disallowed, for lack of substantiation, deductions for all car/truck expenses claimed for the Schedule C1 and C2 businesses. For both years the IRS disallowed, for lack of substantiation, deductions for roughly 90% of the other expenses

[*4] claimed for the Schedule C1 business and for all of the other expenses claimed for the Schedule C2 business.[2]

C. *Tax Court Proceedings*

The Petition was filed on petitioner's behalf by an attorney in California. Presumably for that reason, petitioner's attorney requested Los Angeles as the place of trial. The case was originally calendared for trial during the Court's February 8, 2021, Los Angeles, California, session.

Two months before the scheduled trial petitioner's attorney moved to withdraw, citing a "breakdown in the attorney-client relationship" and petitioner's "refusal to follow counsel's advice." After we granted that Motion, petitioner requested a continuance, stating that he had retained a new attorney to represent him before the IRS. We granted petitioner's Motion, and the case was rescheduled on the Court's October 4, 2021, Los Angeles calendar. Petitioner's alleged new attorney never entered an appearance in our Court.

At petitioner's request the case was continued a second time, for reasons related to the COVID-19 pandemic, and was rescheduled on the Court's March 28, 2022, Los Angeles trial session, which was expected to be conducted in person. One month before trial petitioner filed a Motion to Proceed Remotely, noting that he was representing himself, that he lived in Maryland, and that trial in Los Angeles would be inconvenient. We granted his Motion and set the case for a remote trial on March 29, 2022.

Ten days before the scheduled trial petitioner submitted a letter requesting that the place of trial be changed to Baltimore, Maryland. We denied that request, noting that a change of venue would require a third continuance, which respondent opposed. Continuances are granted "only in exceptional circumstances," Rule 133, and the Standing Pretrial Order informed petitioner that continuances should be requested at least 31 days before the date of trial. Petitioner did not timely request a continuance; rather, he moved for a remote trial, and we granted his Motion. Finding that petitioner had supplied no justification for deferring the trial, we informed him that the case would proceed

---

[2] These Schedule C adjustments produced computational adjustments to other items on petitioner's returns, e.g., to his liability for self-employment tax and his earned income credits. These were essentially automatic, as corollaries of the upward adjustments to his Schedule C income, and they are not otherwise at issue here.

**[\*5]** to trial as scheduled on March 29, 2022. We tried the case via Zoomgov at that time.

OPINION

A.    *Burden of Proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. *See* Rule 142(a). Section 7491(a) provides that the burden of proof may shift to respondent if the taxpayer "introduces credible evidence with respect to [a relevant] factual issue" and satisfies three additional conditions. Those conditions are that the taxpayer must have "complied with the requirements under this title to substantiate any item," must have "maintained all records required under this title," and must have "cooperated with reasonable requests by the [IRS] for witnesses, information, documents, meetings, and interviews." § 7491(a)(2)(A) and (B).

Contrary to the argument advanced in petitioner's post-trial brief, he does not meet the statutory conditions for shifting the burden of proof. As we explain below, he did not introduce "credible evidence" regarding any factual issue in this case. And he did not "maintain[] all records" required to substantiate his claimed deductions.

B.    *Governing Legal Principles*

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to any deduction claimed. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). A taxpayer must show that he has met all requirements for each deduction and keep books or records that substantiate the expenses underlying it. § 6001; *Roberts v. Commissioner*, 62 T.C. 834, 836 (1974). Failure to keep and present such records counts heavily against a taxpayer's attempted proof. *Rogers v. Commissioner*, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

Under *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930), if a taxpayer claims a deduction but cannot fully substantiate the underlying expense, the Court in certain circumstances may approximate the allowable amount, "bearing heavily if it [so] chooses upon the taxpayer whose inexactitude is of his own making." The Court must have some factual basis for its estimate, however, else the allowance

[*6] would amount to "unguided largesse." *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957).

Section 274(d)(4) sets forth heightened substantiation requirements (and overrides the *Cohan* rule) with respect to "listed property." As in effect during 2015–2016, "listed property" included "any passenger automobile." § 280F(d)(4)(A)(i); Treas. Reg. § 1.280F-6(b)(1)(i). No deduction is allowed for vehicle expenses unless the taxpayer substantiates, by adequate records or sufficient evidence corroborating his own statements, the amount, time and place, and business purpose for each expenditure. *See* Temp. Treas. Reg. § 1.274-5T(c). Substantiation by "adequate records" generally requires the taxpayer to "maintain an account book, diary, log, statement of expense, trip sheets, or similar record" prepared contemporaneously with the use of the vehicle, as well as evidence documenting the expenditures. *Id.* subpara. (2). An actual contemporaneous log is not strictly required, but records made at or near the time of the expenditure have greater probative value than records created subsequently. *Id.* subpara. (1).

C.    *Itemized Deduction*

For 2016 petitioner claimed on Schedule A, Itemized Deductions, a deduction of $2,847 for a mortgage insurance premium. The IRS received from CENLAR FSB a Form 1098, Mortgage Interest Statement, reporting in box 5 that petitioner during 2016 had paid a mortgage insurance premium of $2,846. (The $1 difference seems to reflect a rounding error.) The notice of deficiency disallowed this deduction without explaining why. At trial petitioner showed that the mortgage insurance premium was associated with the home that was his principal residence during 2016. *See* § 163(h)(3)(E)(i). We will allow this deduction.

D.    *Schedule C1 Business*

1.    *Car/Truck Expenses*

Section 162(a) permits a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on his trade or business. In connection with his Schedule C1 consulting business petitioner claimed deductions for vehicle expenses of $21,490 and $30,533 for trips allegedly driven in his Mercedes during 2015 and 2016 to visit EHC clients. Vehicle expenses are subject to the strict substantiation requirements set forth in section 274(d)(4). Petitioner has wholly failed to satisfy these requirements.

[*7]     In support of his claimed deductions petitioner submitted annotated calendars for the first seven months of 2015 and all of 2016.  The annotations show the locations petitioner allegedly visited in connection with either his Schedule C1 or his Schedule C2 business.  For several reasons we did not find this evidence credible:

• None of the calendar entries was made contemporaneously with the alleged travel.  These were not all-purpose calendars recording various appointments in petitioner's daily life.  Rather, he created them solely for use in the IRS examination.  He offered no clear explanation as to when he made these entries, and he could not explain how he could have remembered these granular details many months or years after the fact.

• Petitioner supplied no evidence linking the locations shown on the calendars to the addresses of his EHC consulting clients.  He did not identify a single client who resided or worked at any particular address.  Thus, he supplied no evidence that, if he actually made trips to these locations, the journeys were business trips.

• The calendar entries on their face seem questionable in many respects.  For example, if one compares the entries for January 2015 and January 2016, petitioner asserts that he visited the same address in Manhattan on January 1 of each year; that he visited the same address in Brooklyn on January 4 of each year; and that he visited the same address near LaGuardia Airport on January 13 of each year.  We did not find this plausible.

In support of his Schedule C1 vehicle expenses petitioner also submitted alleged odometer readings for his Mercedes.  These were not contemporaneous; rather, he prepared them during the IRS examination, keying the dates and mileage to the dates and destinations shown on the calendars discussed above.  When asked how he kept track of start and finish odometer readings for hundreds of trips, he said that he jotted them down on scraps of paper (since discarded).  We did not find this testimony credible.

In several respects the purported odometer readings on their face lack indicia of reliability:

• Virtually every event, for more than 100 entries, is described simply as "client meeting."

8

[*8] ● The mileages shown do not seem consistent.  For many trips to New York City, petitioner shows the miles driven as between 354 and 362.  For other trips to New York City, he shows the mileage driven as between 448 and 450.  For a trip to Albany, New York—further from his home in Maryland than Manhattan—he shows the mileage driven as 344.  He could not satisfactorily explain these apparent inconsistencies.

● The number of long trips allegedly taken in a single month seems implausible.  For example, in November 2016 petitioner allegedly drove 8,231 business miles, including four round trips to Buffalo, New York, and three round trips to Charleston, South Carolina.  He could not satisfactorily explain why his EHC consulting business would have required repeated round-trip visits to the same client in such rapid succession.

● For most of the 2015 odometer readings, petitioner showed a portion of the mileage as being for personal travel.  For the 2016 odometer readings—for alleged trips to many of the same locations—he showed no portion of the mileage as being for personal travel.  He offered no credible explanation about this.  Moreover, the purported readings for 2015 contradicted his testimony that he never used the Mercedes for personal purposes.

For these reasons, we find that petitioner has not "substantiate[d], by adequate records or sufficient evidence corroborating his own statements, the amount, time and place, and business purpose" of his alleged travel.  *See* Temp. Treas. Reg. § 1.274-5T(c).  We therefore sustain the disallowance of his claimed Schedule C1 car/truck expenses for failure to satisfy the strict substantiation requirements of section 274(d).  Petitioner may well have incurred some travel expenses in conducting his consulting business.  But we are not authorized to estimate expenses under the *Cohan* rule for deductions governed by section 274.  And even if we were authorized to estimate vehicle expenses, we would need a reliable basis for doing so, which petitioner has not supplied.

2.    *"Other Expenses"*

For his Schedule C1 business, petitioner claimed deductions for "other expenses" as follows:

[*9]

| Item | 2015 | 2016 |
|---|---|---|
| Professional Education | $9,574 | $6,019 |
| Laptop Computer | — | 1,039 |
| Computer Software | — | 255 |
| Cell Phone | 2,927 | 2,349 |
| **Total** | **$12,501** | **$9,662** |

The IRS examiner allowed $1,050 of the claimed deductions for 2015 and $1,083 for 2016, disallowing the rest. We find that petitioner has not substantiated deductions in excess of the amounts the IRS allowed. He conceded at trial that he incurred no professional education expenses in either year. The amounts reported on his returns were for his daughter's school tuition, not for his own education. He offered no evidence to substantiate his reported computer and software expenses, nor any evidence to show that such expenses, if incurred, were business rather than personal.

To substantiate his claimed cell phone expenses petitioner submitted statements from AT&T. These are irrelevant because they cover TV and internet service, not cell phone service. He also submitted copies of eight alleged receipts from Cricket Wireless. These show four payments of $308.25 for 2015 (totaling $1,233) and four payments of $291.75 for 2016 (totaling $1,167). However, these are the exact amounts that he reported as cell phone expenses for his Schedule C2 business. *See infra* p. 10. He produced no distinct evidence to substantiate cell phone expenses for his Schedule C1 business.

E.    *Schedule C2 Business*

1.    *Car/Truck Expenses*

For his Schedule C2 construction business, petitioner claimed deductions for vehicle expenses of $6,667 and $9,655 for trips allegedly driven in his Ford SUV during 2015 and 2016 in connection with home improvement projects. By way of support, he offered the annotated calendars discussed previously, which showed travel he allegedly undertook for both businesses. We find these calendars to lack reliability for the reasons discussed above.

Petitioner also submitted two documents captioned "mileage log," which supply data only for 2015. The first lists by month the jobsites he allegedly visited and the work he allegedly performed. The work descriptions are repetitive (e.g., "repair roof and deck boards," "install

**[\*10]** hardwood floor," "install cabinets and paint living room"). Many of the alleged jobsites—in Virginia, Delaware, New Jersey, Pennsylvania, and New York—are quite distant from petitioner's home in Maryland. The second document purports to show odometer readings for these trips.

Neither document was prepared contemporaneously with petitioner's alleged travel. They thus suffer from the same flaws as the purported odometer readings for his Schedule C1 business. These documents also lack indicia of reliability on their face. For example, the starting odometer reading for virtually every trip is the same as the ending odometer reading for the previous trip. This would mean that petitioner during 2015 did not drive a single mile in his Ford SUV that was not connected with his construction business. We did not find that plausible.

For these reasons, we find that petitioner has not "substantiate[d], by adequate records or sufficient evidence corroborating his own statements, the amount, time and place, and business purpose" of his alleged travel. *See* Temp. Treas. Reg. § 1.274-5T(c). We therefore sustain disallowance of deductions for his claimed Schedule C2 car/truck expenses for failure to satisfy the strict substantiation requirements of section 274(d).

### 2. *"Other Expenses"*

For his Schedule C2 construction business petitioner reported "other expenses" as follows:

| Item | 2015 | 2016 |
|------|------|------|
| Materials | $67,930 | $83,783 |
| Tools | 7,850 | 14,325 |
| Cell Phone | 1,233 | 1,167 |
| **Total** | **$77,013** | **$99,275** |

As noted earlier, petitioner submitted copies of eight alleged receipts from Cricket Wireless showing four payments of $308.25 for 2015 (totaling $1,233) and four payments of $291.75 for 2016 (totaling $1,167). At trial respondent objected to the admissibility of these documents on authenticity grounds, and we reserved ruling on those objections. We will

**[\*11]** sustain respondent's objections and exclude these documents from evidence.[3]

There is nothing on these receipts linking them to petitioner, and he supplied no contracts, bills, or invoices showing that he received cell phone service from Cricket Wireless. He testified that he received no invoices from the company but "knew" what he owed each month. He testified that he would go to the vendor's location, pay his bill in cash, and receive a receipt.

We found this story line somewhat implausible, and petitioner supplied no evidence that he used, for business rather than personal purposes, the cell phone for which these payments were allegedly made. More importantly, the receipts do not appear authentic. The amounts shown as "payments" do not align with the other numerical entries in the same column, and they are in a different font from all other numbers on the receipts. We conclude that these documents were photoshopped, with fictitious numbers being inserted as payments. Because these documents are not authentic, they must be excluded from evidence. Petitioner thus has no substantiation for his Schedule C2 cell phone expenses.

Most of the "other expenses" petitioner reported—totaling almost $175,000 for the two years—were allegedly incurred to purchase construction materials and tools. To substantiate these purchases petitioner submitted numerous receipts from Home Depot, Lowe's, and 84 Lumber. The Home Depot receipts show purchases from at least seven different store locations, all in Maryland reasonably close to petitioner's residence.

At trial respondent objected to the admissibility of these receipts on authenticity grounds. He does not contend that these documents were photoshopped or tampered with. Rather, he contends that they were issued to persons other than petitioner. Having reserved ruling on respondent's objections at trial, we will now sustain them and exclude these documents from evidence.[4]

We do not know how petitioner came into possession of these documents, but he has failed to convince us that he was the purchaser of

---

[3] These documents were petitioner's Proposed Trial Exhibits 8-P and 17-P.

[4] These documents were petitioner's Proposed Trial Exhibits 22-P, 23-P, 24-P, 27-P, 28-P, and 29-P.

[*12] the items listed on them. Indeed, he admitted that he did not personally purchase all the items, acknowledging that some purchases were made by "another person." Pressed on who the "other person" was, he mentioned his wife "and maybe somebody else." For numerous reasons we do not believe that the items listed on these receipts were purchased for petitioner's Schedule C2 home improvement business:

• Every single receipt is for a cash purchase, in amounts often exceeding $5,000. Petitioner testified that he got cash from his bank, either from a bank teller or by withdrawing from the ATM. But he did not provide to the IRS bank statements or other bank records that would substantiate these transactions. And he declined to introduce any bank records into evidence at trial.

• Petitioner allegedly paid almost $175,000 for materials and tools in 2015–2016, and it is hard to see how he had the financial ability to do that. Ignoring all disallowed expense deductions, his total income was about $144,000 in 2015 and $170,000 in 2016. He filed as head of household with two dependents, had a good-sized mortgage, and paid private school tuition for at least one child. It is implausible that someone in his financial position would pay $175,000 in cash for materials and tools for use in a business that was utterly unprofitable.

• The receipts for materials often show large-volume purchases— on the order of 200 pieces of lumber, 50 sheets of gypsum wallboard, and 100 gallons of paint. These volumes vastly exceeded what would have been needed for the projects shown on petitioner's mileage log.

• Apart from reflecting implausibly large volumes, the receipts often show purchases of items that petitioner could not possibly have used in any project that he allegedly undertook during the ensuing months. For example, the receipts show purchases of bathtubs, shower units, and refrigerators, but petitioner could not identify any project that would have required installation of such items. He testified that he made advance purchases of these materials and stored them in his garage until he needed them. We did not find this testimony plausible.

• Virtually all of the receipts show purchases from stores near petitioner's home in Maryland. But many of his alleged jobsites were in New York, Delaware, Pennsylvania, and New Jersey. He could not explain why he would have chosen to transport large quantities of huge items to distant locations on interstate highways rather than purchase them locally. And he could not explain how he fit these truckloads of

**[\*13]** materials into his Ford SUV.  He backtracked by asserting that he would often leave some materials at the store and make multiple trips. Given the far-away locations of his alleged jobsites, we did not find this testimony credible.

● Petitioner allegedly spent more than $21,000 on tools, but he was unable to explain the function or intended operation of many machines and tools listed on the receipts.  He said that he could not remember what these things were used for, having purchased them years ago. If petitioner was genuinely engaged in the residential construction business, this testimony was surprising.

By the end of trial, we had serious doubts whether petitioner ever did engage in the residential construction business.  If he did, he would have incurred some expenses for construction materials and tools, and these are expenses theoretically subject to estimation under the *Cohan* rule.  But the Court must have some factual basis for such an estimate, lest the allowance amount to "unguided largesse." *Williams*, 245 F.2d at 560.  Petitioner failed to supply the necessary factual basis.  If his residential construction business existed, he provided no evidence that would enable us to determine its actual scope and scale.  And while he may have purchased some of the items listed in the receipts, there is no way for the Court to ascertain which those were.  We will accordingly sustain respondent's disallowance of his Schedule C2 other expense deductions.

To implement the foregoing,

*Decision will be entered under Rule 155.*